UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQLYN S., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br><br> Defendant. | Case No. 21-cv-04248-JSC <br><br> **ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 17, 20 |

Plaintiff seeks social security benefits for physical and mental impairments, including major depressive disorder, post-traumatic stress disorder, anxiety disorder, chronic fatigue syndrome, postural orthostatic tachycardia, obstructive sleep apnea, migraine headaches, short-term memory deficit, and Lyme disease. (Administrative Record ("AR") 20, 2052, 2750.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the Commissioner of Social Security's determination of Plaintiff's disability onset date. Plaintiff's and Defendant's motions for summary judgment are now pending before the Court. (Dkt. Nos. 17, 20.) After careful consideration, the Court concludes that oral argument is unnecessary. *See* N.D. Cal. Civ. L.R. 7-1(b). The Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings. Because the ALJ's evaluation of the medical evidence and consideration of Plaintiff's subjective pain testimony is not supported by substantial evidence, and there are outstanding issues to be resolved before a disability determination can be made, remand for further proceedings is appropriate.

## BACKGROUND

### A. Procedural History

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act

1  (the "Act") on April 30, 2015, alleging a disability onset date of July 1, 2011. (AR 396, 409.)
2  Plaintiff filed a subsequent application associated with her Title II claim for Supplemental
3  Security Income. (AR 396.)  Plaintiff's applications were denied both initially and upon
4  reconsideration. (AR 189-193, 199-204.)  Plaintiff then submitted a request for a hearing before an
5  Administrative Law Judge ("ALJ"). (AR 206-207.)  Her hearing was held on December 6, 2017.
6  (AR 47.)  The ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (AR 177.)
7  Plaintiff then filed a request for a review of the ALJ's decision. (AR 186.)  The Appeals
8  Council granted the request "under the error of law and broad policy or procedural issue provision
9  of the Social Security Administration regulations (20 CFR 404.970)," and remanded the matter.
10 (*Id*.)  A different ALJ held a subsequent hearing on June 30, 2020. (AR 89.)  The ALJ issued a
11 partially favorable decision, finding that Plaintiff was disabled as of October 1, 2015, but not prior
12 to that date. (AR 12, 30-34.)  Therefore, Plaintiff was not under a disability within the meaning of
13 the Act at any time through March 31, 2014, the date last insured. (*Id.*)  Subsequently, Plaintiff
14 sought review in this Court. (Dkt. No. 1.)  In accordance with Civil Local Rule 16-5, the parties
15 filed cross-motions for summary judgment. (Dkt. Nos. 17, 20.)

**B. Issues for Review**

1. Did the ALJ err in determining Plaintiff's disability onset date under Social Security Ruling 18-1p?
2. Did the ALJ err in evaluating the medical evidence?
3. Did the ALJ err in evaluating Plaintiff's subjective pain testimony?
4. Did the ALJ err in evaluating lay witnesses?
5. Should the Court remand for payment of benefits or further proceedings?

**LEGAL STANDARD**

A claimant is considered "disabled" under the Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A). Second, the impairment(s) must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." *Id*. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's RFC, the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), superseded by regulation on other grounds; *see* 20 C.F.R. § 404.1520(a).

An ALJ's "decision to deny benefits will only be disturbed if it is not supported by substantial evidence or it is based on legal error." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (cleaned up). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (cleaned up). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id*. In other words, if the record "can reasonably support either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (cleaned up). However, "a decision supported by substantial evidence will still be set aside if the ALJ does not apply proper legal standards." *Id.*

**DISCUSSION**

Since the ALJ found Plaintiff disabled as of October 1, 2015, the sole issue is whether the ALJ erred by determining that Plaintiff was not disabled prior to that date. Plaintiff insists that she was disabled as of at least April 2013 and contends that the ALJ erred (1) as a matter of law in determining Plaintiff's disability onset date; (2) in her consideration of the medical evidence; (3) in her consideration of Plaintiff's subjective pain testimony; and (4) in her evaluation of lay witness testimony.

3

**A. Case Law Cited and Social Security Ruling 18-1p**

Plaintiff contends that the ALJ should have found her disabled no later than April 2013 and argues that Social Security Ruling 18-1p and case law support her proposition; however, in support of this argument Plaintiff block quotes portions of this Court's opinion in *Polavaa N. v. Saul*, No. 19-CV-06366-JSC, 2021 WL 1118074 (N.D. Cal. Mar. 24, 2021), but does not explain what bearing the decision has on her case. (Dkt. No. 17-1 at 15-17.) Likewise, while Plaintiff block quotes from Social Security Ruling 18-1p and argues that "Social Security Ruling 18-1p describe the factors an ALJ should consider in determining an onset date of disability" and that the ALJ "failed to properly consider these factors in assessing the medical evidence," Plaintiff does not specify which factors the ALJ failed to consider. (Dkt. No. 21 at 6.) Because Plaintiff has failed to raise a specific claim of legal error, the Court proceeds to consider her other arguments regarding the ALJ's errors in determining the disability onset date.

**B. Consideration of the Medical Evidence**

In the Ninth Circuit, and under the rules in place at the time Plaintiff filed her application for disability benefits, courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)).[1] A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a non-examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991) (internal citations omitted). And "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*,

---

[1] Effective October 2, 2018, Social Security Ruling 83-20 was rescinded and replaced by Social Security Ruling 18-1p.

1  81 F.3d at 830 (cleaned up).  Likewise, "the opinion of an examining doctor, even if

2  contradicted by another doctor, can only be rejected for specific and legitimate reasons that

3  are supported by substantial evidence in the record." *Id*. at 830-31 (cleaned up).

4  Here, Plaintiff challenges the weight the ALJ gave to the opinions of treating physicians

5  Dr. Steven Harris and Dr. Charles Fenzi.

### 1. Dr. Harris

Plaintiff contends that the ALJ did not provide "clear and convincing" reasons for rejecting Dr. Harris's opinion.  Plaintiff was treated monthly by Dr. Harris beginning in 2016. (AR 2052.)  Dr. Harris completed a medical source statement regarding Plaintiff's physical impairments in May 2017. (AR 2059.)  Further, in May 2017, Dr. Harris opined that Plaintiff's symptoms, such as severe fatigue and marked cognitive loss, and positive findings of co-incident infections were consistent with chronic Lyme disease. (AR 2060.)  He also determined that Plaintiff exhibited 12 out of 16 objective medical signs listed on the medical source statement and all of the symptoms listed on the statement. (AR 2054.)  Dr. Harris believed these symptoms and medical impairments would result in Plaintiff being absent for more than 4 days per month and he determined that Plaintiff would have to take breaks during work every 30 minutes for an average of one hour. (AR 2058.)

Most important to this appeal, he also concluded that Plaintiff "had been experiencing a profound degree of symptoms for at least 18 to 24 months" before an April 2015 serological finding. (AR. 2061.)  In reaching this conclusion, Dr. Harris relied on correlate testing of Lyme disease that occurred prior to when he became Plaintiff's treating physician. (*Id*.)  Thus, in evaluating those tests, Dr. Harris was arguably acting as an examining physician rather than a treating physician.  Neither party addresses whether an examining physician's or a treating physician's legal standard should be applied to this portion of Dr. Harris's opinion.  The Court will apply the standard that applies to an examining physician, which requires the ALJ to give "specific and legitimate" reasons for rejecting the examining physician's opinion. *Lester*, 81 F.3d at 830-831.

Here, the ALJ gave Dr. Harris's opinion little weight because it (1) was "not particularly

United States District Court
Northern District of California

well supported by his own treatment notes," and (2) was inconsistent with the longitudinal evidence. (AR 27.)  As a preliminary matter, although Plaintiff's summary judgment motion challenges the ALJ's rejection of Dr. Harris's opinion, the Commissioner's opposition does not address Dr. Harris's opinion at all. (*Compare* Dkt. No. 17-1 at 22-24 with Dkt. No. 20.) Nonetheless, the Court has reviewed the ALJ's decision and the controlling law to determine if the ALJ gave "specific and legitimate" reasons for giving little weight to Dr. Harris's opinion.  She did not.

First, the ALJ's finding that Dr. Harris's treatment notes do not support his opinion is not sufficiently specific to support discounting Dr. Harris's opinions. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989) (internal citations omitted) (rejecting the ALJ's reliance on "broad and vague" reasons for discounting treating physician's opinion).  The ALJ found that Dr. Harris's notes reflected only minimal abnormalities and conservative treatment recommendations that failed to align with his opinion of Plaintiff's severe limitations. (AR 27.)  The ALJ cites to two 2017 office visit notes from Dr. Harris in support of her conclusion. (*Id.*)  In the first note, Dr. Harris reports that Plaintiff has "felt a little better than previous months," but she is "still only 45% improved" and continues to suffer from extreme fatigue and cognitive dysfunction. (AR 1736.)  In the second note, he reports "[g]etting ready to do stem cells, but really nervous of what is happening in the lower bowel," and "[t]oday the pelvic pain is better, at it's worse it's an 8/10 high pain." (AR 2201.)  The ALJ did not explain how these treatment notes and clinical findings did not support Dr. Harris's opinions as to Plaintiff's symptoms before October 2015 and it is not apparent from the notes themselves.  (*See* AR 26-27.); *see Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) ("The ALJ must do more than state conclusions. [Sh]e must set forth h[er] own interpretations and explain why they, rather than the doctors', are correct.").

The ALJ also found that Dr. Harris's opinion regarding Plaintiff's functional limitations were inconsistent with his reports showing "poor to fair prognosis, infectious agents, neuropsychological testing, immune suppression, muscle twitching, spasms, tenderness, weakness, trigger tender points, abnormal neurological reflexes, skin rashes, cough, insomnia, swollen lymph nodes, and slowed or slurred speech." (AR 27, referencing AR 2053-2061.)  However, the ALJ

6

did not explain which of Plaintiff's limitations assessed by Dr. Harris were inconsistent with which portions of his treatment notes. (*See* AR 27.); *see Garrison v. Colvin*, 759 F.3d 995, 1012–1013 (9th Cir. 2014) ("[A]n ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for [her] conclusion."). The ALJ also did not specify which treatment recommendations were regarded as "conservative." (*Id.*) Therefore, the ALJ's broad reference to the medical record does not provide "specific and legitimate reasons" to discount Dr. Harris's opinion.

Moreover, the ALJ ignored that Dr. Harris's limitations were based on positive laboratory findings and an evaluation of Plaintiff's symptoms like profound fatigue, muscle and joint pains, and cognitive loss, which he found to be consistent with chronic Lyme disease. (AR 2052-2054, 2061.) Based on correlate tests for Lyme disease, in particular the CD57 finding, Dr. Harris concluded that Plaintiff "had been experiencing a profound degree of symptoms for at least 18 to 24 months" before an April 2015 serological finding. (AR. 2061.) According to this conclusion, Plaintiff's symptoms could have begun as early as April 2013, which would support an earlier onset date. All of these clinical findings appear in the record, and Dr. Harris's assessment of Plaintiff's limitations such as standing for less than an hour, walking for less than an hour, sitting for up to 25 minutes, and limited repetitive reaching, handling, or fingering are logically tied to these symptoms. (AR 2052-2059.); *see David D. v. Saul*, No. 20-CV-02696-JSC, 2021 WL 2476740, at *7 (N.D. Cal. June 17, 2021) (finding that Plaintiff's "standing, walking, sitting, postural, and manipulative limitations" were "logically tied to "Plaintiff's pain level, diffuse tenderness all over Plaintiff's body, numbness in Plaintiff's arms and legs, and reduced range of motion in Plaintiff's neck and back"). Thus, there are no obvious inconsistencies between the treatment notes and Dr. Harris's medical opinion forms. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996) ("Where the purported existence of an inconsistency is squarely contradicted by the record, it may not serve as a basis for the rejection of an examining physician's conclusions.").

7

Second, the ALJ found that Dr. Harris's opinions were inconsistent with "longitudinal evidence, given the intermittency of abnormalities and typically normal findings upon diagnostic testing and imaging." (AR 27.)  The ALJ relied on reports of diagnostic testing that contain varied findings depending on the area being tested. (*See* AR 24, 25, referencing, AR 619-631, 632-650, 724-734, 761-805, 806-889, 925-937, 938-986, 1071-1270.)  For example, a June 2014 neuropsychological assessment noted that Plaintiff's "[h]eart rate responses to deep breathing and the Valsalva maneuver were normal" and "QSWEAT responses were normal for all sites." (AR 1113.)  The same report also noted that "protocol is abnormal.  It suggests mild to moderate cognitive impairment.  Neurologically-based cognitive compromise cannot be ruled out." (AR 1107.)  Another report taken in March 2014 noted that Plaintiff's cardiovascular results were normal, but also reported that Plaintiff had abnormal test results in other areas. (AR 768, 765.)  The Court agrees that the reports display intermittent abnormal results, however the ALJ does not explain how these intermittent abnormal results are inconsistent with Dr. Harris's opinion. (*See* AR 27.); *see David D. v. Saul*, No. 20-CV-02696-JSC, 2021 WL 2476740, at *7 (N.D. Cal. June 17, 2021) (finding that the ALJ did not give a 'specific and legitimate reason supported by substantial evidence' to discount Plaintiff's doctor's opinion because the ALJ did not explain which treatment notes and clinical findings contradicted his opinion.).  Additionally, the rest of the cited diagnostic testing that the ALJ relied on occurred in 2011 and 2012 but, evidence from that period does not contradict Dr. Harris's opinion because he concluded that Plaintiff had been experiencing severe symptoms from around April 2013 to October 2014. (AR 20, 23, 2061.)

Accordingly, the ALJ failed to provide "specific and legitimate reasons" for giving limited weight to Dr. Harris's medical opinion regarding Plaintiff's limitations before October 2015.

**2. Dr. Fenzi**

Plaintiff also argues that the ALJ improperly rejected portions of Dr. Fenzi's opinion showing that Plaintiff was disabled before October 2015.  As Dr. Fenzi was one of Plaintiff's treating doctors, the ALJ was required to provide "clear and convincing" reasons for rejecting his opinion. *Baxter*, 923 F.2d at 1396.  The Court finds that the ALJ did not meet this standard in part.

Dr. Fenzi provided his medical opinion in two separate forms in October 2015. (AR 2310-

8

2318.) The ALJ relied on Dr. Fenzi's findings to establish the October 2015 disability onset date. (AR 31-32.) In particular, the ALJ noted "[s]ince the established onset date, Dr. Fenzi's opinion is supported by his clinical impressions, as he documented the claimant's severe recurrent major depressive disorder with a significant delusional component starting in October 2015." (AR 31 (internal citations omitted).) However, the ALJ gave less weight to Dr. Fenzi's opinions regarding limitations prior to October 2015 because she found his opinion was inconsistent with the evidence regarding Plaintiff's "relatively intact activities of daily living." (AR 28.)

In particular, the ALJ highlighted Plaintiff's ability to maintain a driver's license and travel independently. (AR 26.) However, the ALJ ignored the significant hardship that performing these activities caused Plaintiff. (AR 68-69, 110-112.); *see Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (internal citations omitted) (The ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result."). For example, while Plaintiff took one recreational solo out-of-state trip in 2014 to attend her best friend's funeral (AR 110-111), the flight triggered a migraine and when she arrived at the funeral, she was not able to interact with others because of her fatigue. (AR 122-123.) Plaintiff did travel internationally to Costa Rica and Mexico without any travel illness, but those trips occurred in 2006 and 2011, which is before the disability date alleged by Plaintiff. (AR 1754, 1498.) Additionally, Plaintiff would typically drive only about 10 minutes to get to school and was only able to drive for a total of 40 minutes before having to take a break. (AR 67, 68.) Thus, Plaintiff's driving and purported travel are not clear and convincing" reasons for giving limited weight to Dr. Fenzi's medical opinion regarding Plaintiff's limitations before October 2015.

### C.    Plaintiff's Subjective Pain Testimony

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (cleaned up). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ

9

can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (cleaned up).  If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (cleaned up).

Here, applying the two-step analysis, the ALJ first determined that Plaintiff's subjective pain testimony "could reasonably be expected to produce the alleged symptoms." (AR 22.)  Since Plaintiff met the first part of the test, the ALJ had to find evidence of malingering or provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms. *Lingenfelter*, 504 F.3d at 1036.  The ALJ found no evidence of malingering, but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.)  The ALJ provided three reasons for her conclusion: (1) Plaintiff's symptom testimony of her "impairments and functional limitations prior to October 2015" were not supported by the objective medical evidence in the record; (2) Plaintiff's treatment received before October 2015 was limited and conservative; and (3) Plaintiff's activities before October 2015 were inconsistent with a finding of severe impairment. (AR 23, 28.)

**1. Plaintiff's Symptom Testimony is Consistent with the Medical Evidence**

First, the ALJ found that Plaintiff's limitations prior to October 2015 were inconsistent with the medical evidence in the record. (AR 23.)  A lack of objective medical evidence to fully corroborate the severity of a claimant's symptoms is insufficient on its own, to reject the claimant's testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc) (internal citations omitted).  Here, although the ALJ listed several physical and mental examinations that she found undermined Plaintiff's testimony, she did not explain which of these findings contradicted Plaintiff's specific statements regarding her limitations. (AR 23-25); *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015) (holding that ALJ is required to "specify which testimony she finds not credible and then provide clear and convincing reasons . . . to support that credibility determination").

The ALJ's finding that Plaintiff was not consistently disabled prior to October 1, 2015,

10

rests on a few examples of temporary small improvements and overlooks other examples of temporary worsening and the overall severity of Plaintiff's decreased functionality. (*Compare* AR 2264 (On a February 2014 visit, Plaintiff "reports that she is better physically and mentally."), AR 2278 (On a report signed March 2014, "She [plaintiff] feels she is doing well without medication."), AR 24 ("[S]ome abnormalities were seen at a January 2018 neuropsychological evaluation in (52F/18-24), but the validity of test results were challenged due to variability and the claimant's inconsistent performance"), *with* AR 529 (From August 2010 to June 2011, Plaintiff sought chiropractic care from providers, who noted that Plaintiff's "symptoms of pain, fatigue, anxiety, and cognitive decline."), AR 65 (In 2012, Plaintiff had to stop attending classes regularly due to her fatigue.), AR 126-128 (Since 2014, Plaintiff experienced cognitive issues, including significant memory loss and nearly daily migraines that could sometimes last up to a week.), AR 2751 (Since 2014, the "variety and severity" of Plaintiff's symptoms made her entire day "have to revolve around managing them")). The ALJ also ignored the opinions of Dr. Harris and Dr. Fenzi, which corroborated Plaintiff's symptom testimony. (*See* AR 2749 (noting Plaintiff's fatigue began sixteen years before October 13, 2016), AR 2060 (finding that as of April 2015, Plaintiff's symptoms were "highly correlated with persistent Lyme infection of long duration"), *Id.* (finding that before August 2014 "neuropsychological testing showed cognitive impairments in areas of the brain associated with Lyme infection").

The ALJ's reliance on "cherry-picked" evidence of some functional improvements at certain times does not rise to the level of a specific, clear, and convincing reason to discount any part of Plaintiff's testimony. *See Williams v. Colvin*, No. ED CV 14-2146-PLA, 2015 WL 4507174, at *6 (C.D. Cal. July 23, 2015) (cleaned up) ("An ALJ may not cherry-pick evidence to support the conclusion that a claimant is not disabled, but must consider the evidence as a whole in making a reasoned disability determination.").

**2. Lack of Consistent Treatment Prior to October 2015**

Second, the ALJ found that the treatment Plaintiff received before October 2015 was limited and conservative and, therefore, did not support her functional limitations for that period. (AR 28.) The ALJ stated that although there "are notes of prescribed medications for mental

11

health such as Clonazepam once a day for short periods such as in early 2014, such use was intermittent and there is no history of psychiatric hospitalization, thoughts of self-harm, or residential psychiatric treatment." (AR 24.) However, before the ALJ can discount Plaintiff's symptom testimony based on treatments not pursued by Plaintiff, the ALJ is required to analyze the reasons Plaintiff gave for not pursuing the treatments. *See Orn*, 495 F.3d at 638 (cleaned up) ("[A]n adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.").

Here, Plaintiff offered explanations for her intermittent health treatment and decline of psychiatric medication. She testified that in 2014 treatments such as IV antibiotics helped alleviate her symptoms, but she had to discontinue the process because she was not able to afford them. (AR 77.) She also testified that she tried several mental health medications, but they resulted in side effects, such as nightmares and weight gain. (AR 22, 117.) Additionally, starting around 2012, she would drive herself once a week to the acupuncturist to alleviate her pain, but often had to cancel appointments because of her health. (AR 121, 739.) The ALJ did not discuss whether these reasons justified Plaintiff's decision to pursue "conservative" treatment. (*See* AR 24.) Moreover, Plaintiff was not insured and "failure to receive medical treatment during the period that [s]he had no medical insurance cannot support an adverse credibility finding." *Orn*, 495 F.3d at 638.

Having failed to address the reasons Plaintiff gave for her intermittent health treatment and declining medication, the ALJ erred by relying on those treatment decisions to discount Plaintiff's testimony.

### 3. Plaintiff's Activities of Daily Living

Third, the ALJ found that Plaintiff's activities before October 2015 were inconsistent with the severity of the limitations alleged. (AR 23, 25.) "[T]he ALJ may use ordinary techniques of credibility evaluation, including assessing inconsistencies either in the claimant's testimony or

12

between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). If the ALJ makes a "specific finding" that the plaintiff "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting," that "may be sufficient to discredit a claimant's [symptom] allegations." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (citation omitted).

The ALJ found that Plaintiff's activities prior to October 2015, such as household chores, driving, living with a roommate, attending classes, shopping, and her single solo cross-country trip in 2014, suggested fewer limitations than alleged by Plaintiff. (AR 23, 27-28, 63-71, 105, 108-09, 111-12). Plaintiff did engage in daily living activities such as attending school part-time, driving for up to 40 minutes, living with a roommate, and taking monthly grocery trips. (AR 65-67.) However, her ability to perform these activities is not a specific, clear, and convincing basis on which to discredit her symptom testimony. *See Garrison*, 759 F.3d at 1016 (finding that "the ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day" . . . did not "satisfy the requirement of a clear, convincing, and specific reason to discredit" a plaintiff's testimony.). Moreover, these activities are not inconsistent with her inability to perform activities that would be expected of her in a work setting. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").

Further, the ALJ did not make a "specific finding" that Plaintiff "is able to spend a substantial part of [her] day" engaged in these activities. *Vertigan*, 260 F.3d at 1049. And, to the contrary, Plaintiff testified that since March 2014, her chronic fatigue has been increasingly severe, with only a few "good days here and there." (AR 125.) Plaintiff categorized a good day as a day where she could get out of bed, brush her teeth, and bathe on her own. (*Id.*) The ALJ nevertheless found that Plaintiff's "ability to learn, recall, or use information to perform work activities independently, appropriately" was not effectively limited because she was able to

13

maintain a driver's license and drive independently. (AR 25.)  However, the ALJ failed to consider that Plaintiff was only able to drive for a total of 40 minutes before having to take a break. (AR 68.)  Additionally, from 2011 to 2014, Plaintiff lived with boyfriends that would help her complete all her tasks, including household chores and cooking. (AR 63-65.)  Moreover, while she was in school, she would take resting breaks in between classes and classmates would assist her when she had postural orthostatic tachycardia syndrome episodes. (AR 70, 75.)  She had special accommodations from professors to allow her to lay down during class. (AR 120.)  Eventually, Plaintiff ceased attending classes completely because she felt "too sick." (AR 67.)

Thus, the record does not support a specific finding that Plaintiff was able to spend a substantial part of the day performing these activities. *See Diedrich v. Berryhill*, 874 F.3d 634, 642–43 (9th Cir. 2017) ("The ALJ took note of certain daily activities that [plaintiff] could perform, such as bathing, cooking, taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook.  But the ALJ ignored other evidence showing the difficulties [plaintiff] faced in everyday life.").

*** 

In sum, none of the reasons given by the ALJ rise to the level of a "specific, clear and convincing" reason to discount Plaintiff's testimony and the ALJ's rejection of Plaintiff's testimony was in error.

### C. Harmless Error

Because the ALJ's consideration of the medical evidence and subjective pain testimony are not supported by substantial evidence, the ALJ's decision cannot stand.  Given this, the Court need not consider Plaintiff's additional arguments regarding the ALJ's errors with respect to the lay witness testimony.  Since the ALJ's errors here collectively go to the center of the disability determination, they are not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (cleaned up) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned."); *See also Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully

14

crediting the testimony, could have reached a different disability determination.").

### D. Remand for Benefits or Further Proceedings.

Plaintiff asks the Court to remand the case for the payment of benefits or, alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (cleaned up). A remand for an award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose, (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (cleaned up).

Here, the first prong of the test is not satisfied because the record has not been fully developed. There are outstanding issues that must be resolved before a final determination can be made given the Court's conclusion that the ALJ erred concerning (1) her weighing of the medical evidence; and (2) her weighing of Plaintiff's subjective pain testimony. Next, as discussed above, the second prong of the test has been satisfied because the ALJ gave legally insufficient reasons for discounting Plaintiff's symptom testimony and Dr. Harris's and portions of Dr. Fenzi's medical opinions relating to her limitations prior to October 2015. However, the third prong is not satisfied because it is unclear from the record that the ALJ would be required to find Plaintiff disabled prior to October 2015 were the evidence properly evaluated.

### CONCLUSION

For the reasons set forth above, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings consistent with this Order.

This Order disposes of Dkt. Nos. 17 and 20.

//

//

//

//

**IT IS SO ORDERED.**

Dated: July 29, 2022

                                                                              _____
                                                                              JACQUELINE SCOTT CORLEY
                                                                              United States District Judge